# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE  DIVISION

Latiolais                                                   Civil Action No. 09-0018

versus                                                   Judge Tucker L. Melançon

Griffith, et al                                   Magistrate Judge Patrick J. Hanna

## MEMORANDUM RULING

Before the Court is a Motion For Summary Judgment filed by defendants Roylis Gallow as a police officer for  the City of Opelousas, and the City of Opelousas [Rec. Doc. 70], a Motion For Summary Judgment filed by Claudette Gallow, widow and succession representative of Officer Roylis Gallow[1] [Rec. Doc. 106] (collectively referred to as "defendants"), and plaintiff's opposition thereto [Rec. Doc. 97], a Motion To Dismiss And/Or Motion For Summary Judgment filed by defendant Donald Cravins, Sr., individually,

---

[1] It is undisputed that Officer Roylis Gallow is deceased and that his estate is represented by his widow, Claudette Gallow.  Plaintiff's Complaint does not specify whether or not Officer Gallow is named as a defendant in his individual or in his official capacity as a police officer for the City of Opelousas.  The Supreme Court has differentiated between official capacity suits and personal (also known as "individual") capacity suits: an official capacity suit attempts to sue the government entity by naming the officer as defendant, whereas personal capacity suits "seek to impose individual liability upon a government officer for actions taken under color of law."  *Hafer v. Melo*, 502 U.S. 21 (1991).  A state official sued in his individual capacity may be able to assert personal immunity defenses, including the defense of qualified official immunity, but these defenses are unavailable in an official-capacity action precisely because liability in such an action lies only against the government.  Thus, the Court will consider the Motion for Summary Judgment filed by the City of Opelousas in addressing plaintiff's claims against Gallow in his official capacity as a police officer for the City of Opelousas, and the Motion for Summary Judgment filed by Claudette Gallow, which adopts the motion filed by the City of Opelousas, in addressing plaintiff's claims against Gallow, individually.

1

acting as a Louisiana State Senator, ("Cravins")[2] [Rec. Doc. 73], and plaintiff's opposition thereto [Rec. Doc. 99] as well as a Motion For Summary Judgment filed by Bradley Griffith [Rec. Doc. 76], plaintiff's opposition thereto [Rec. Doc. 100] and Griffith's Reply Memorandum [Rec. Doc. 108].   For the following reasons, the motions for summary judgment filed by defendants Griffith, the Estate of Gallow and Cravens will be denied and the motion filed by the City of Opelousas and Officer Gallow in his official capacity will be granted in part and denied in part.

## I.  Procedural Background

This action arises from a custody dispute over Cole[3], the minor son of Resa Latiolais ("Latiolais") and Bradley Griffith ("Griffith").   The state court record establishes the following.  On October 5, 2005, Griffith filed a petition seeking to establish Cole's paternity and to be awarded Cole's sole custody.  Cole had resided exclusively with Latiolais since his birth on November 19, 2001.  Latiolais reconvened against Griffith, on October 10, 2005, seeking both custody and an order of child support.  A trial on the merits was conducted beginning on August 21, 2006 and with interruptions, concluded on January 28, 2008.[4]  The

---

[2] Although not germane to the issues presently before the Court or to the Court's ruling, Cravins currently serves as Mayor of the City of Opelousas.

[3] Latiolais named her minor child, Cole, in the Complaint.  *R. 1.*

[4] In *Griffith v. Latiolais*, 32 So.3d 380, 385, FN4 (La.App. 3 Cir., 2010), the court noted that the custody trial on the merits began on August 21, 2006, and was recessed first until August 23, 2006. Thereafter, the proceedings were recessed until December 18, 2006; January 8, 2007; January 9, 2007; March 5, 2007; March 7, 2007; April 30, 2007; July 19, 2007; January 23, 2008; January 24, 2008; January 25, 2008; and January 28, 2008.

trial court took the matter under advisement and issued written reasons for judgment on March 27, 2008.  On October 9, 2008, for oral reasons assigned, the trial court modified its March 27, 2008 judgment and entered the modified judgment.[5]  The judgment as modified by the state trial court ordered joint custody, but did not designate a domiciliary parent.  The modified state district court judgment provided alternate weekly physical custody with that week's non-custodial parent having an overnight visit on Tuesday, and further provided for an alternating holiday schedule.  Additionally, the modified judgment provided that the parents would be subject to the continuing instructions of psychologists and/or counselors as to how Cole was to be raised.  Latiolais appealed the trial court's ruling and judgment.  On March 3, 2010, the Court of Appeal of Louisiana, Third Circuit, issued a ruling reversing the trial court  and rendered judgment awarding sole custody of Cole to Latiolais.  *Griffith v. Latiolais*, 32 So.3d 380 (La.App. 3 Cir. 3/3/10).  The court of appeal found no manifest error in the trial court's factual findings and assessed Griffith with all costs both in the trial level and in the  appellate court.  *Id.*  The Supreme Court of Louisiana granted Griffith's Application for Writ of Certiorari and on October 19, 2010, reversed the appellate court's ruling and restored joint custody to Griffith and Latiolais, designating Latiolais as the domiciliary parent.  *Griffith v. Latiolais*, 48 So.3d 1058 (La., 2010) *clarified by Griffith v. Latiolais*, __ So.3d __, 2010 WL 4811891, 1 (La., 2010).

---

[5]  According to the opinion issued by the Third Circuit Court of Appeal for the State of Louisiana, "[O]n October 9, 2008 the trial court executed a judgment incorporating its reasons for judgment."  *Griffith v. Latiolais*, 32 So.3d at 384-385.

3

Latiolais filed this law suit on January 1, 2009 alleging claims under Title 42 of the United States Code Section 1983 as well as state law claims against Griffith, Officer Roylis Gallow, *see FN 1, supra*, the City of Opelousas and Donald Cravins, Sr., in his capacity as a Louisiana state senator.

## II.  Factual Background

It is undisputed that Latiolais and Griffith were never married and had no custody arrangement prior to 2005; Cole, is the product of the parties' extramarital relationship which did not include the element of cohabitation; and the relationship lasted almost fourteen years. Latiolais alleges that in September of 2005, when she, her daughter, Lana[6], and Cole evacuated to a hotel in Mississippi during Hurricane Rita, Griffith became angry because Latiolais' then boyfriend, Gregory Chappell[7], was with plaintiff and her children.  Following that event, on October 5, 2005, Griffith filed a *Petition to Establish Paternity and for Custody* of Cole claiming Latiolais had "lately not made choices which are in the child's best interest."  *R. 1, ¶ 2.*  Griffith's request was denied because his Petition "was devoid of any specific facts" and therefore, he lacked evidence to substantiate his assertion.  *R. 97, Exh. 94, p. 3.*

Plaintiff claims that thereafter, Griffith, in an effort to win custody of Cole and knowing that to do so he needed evidence to demonstrate Latiolais was an unfit parent,

---

[6]  Lana is Latiolais' daughter from a previous marriage.

[7]  Latiolais and Chappell later married.

embarked on a campaign to discredit her by getting her into legal trouble. *R. 97.*  Latiolais further claims that, between October and December, 2005, Griffith and his "cohorts including defendant Roylis Gallow and Donald Cravins, as well as Cindy Hebert, Jan Huffman, Jessica Harbin, Theresa Boatner, and others" were responsible for her being investigated for food stamp fraud, investigated by the Office of Community Services on two occasions on "trumped up charges", confronted by police officers on several occasions, reported for criminal damage to property, and charged with simple battery. *Id.*  In July 2006, Latiolais contends she was harassed to the point of seeking court intervention, had retaliatory restraining orders taken against her, and she was arrested for aggravated assault.  *Id.*

Latiolais maintains that Griffith's involvement in the foregoing events lead to the state court's rulings on May 1, 2006, which limited her custody of Cole, and on March 27, 2008, which continued Latiolais' limited custody to alternating weekends and one day during the off-week until May of 2008.  *See, R. 1, Exh. A, Griffith v. Latiolais, No. 2005-5193-H3, Reasons For Ruling*. Thereafter, Latiolais and Griffith were to begin having joint custody of Cole.  Thus, Latiolais lost sole custody of Cole and was prevented from having joint custody for nearly two years.  *Id.*

Plaintiff filed this action on January 7, 2009, against Griffith, Gallow and Cravins under §1983, alleging they engaged in a conspiracy which resulted in the deprivation of her constitutional rights.  As framed by Latiolais, defendants' participation in "an intentional scheme to use the power of the state to wrest custody of Cole from Resa" which led to

"Resa's loss of the care, custody, control, and management of Cole [,] was an actual deprivation of her constitutional rights."  While not named as party defendants, Latiolais specifically alleges that Jan Huffman and Jessica Harbin acted as co-conspirators and harassed plaintiff in order to assist Griffith in this intentional scheme.   Contrary to defendants' assertions, plaintiff has not raised a deprivation of her alleged rights by any action of the state district court nor has she made a collateral attack on the various state judgments.

### III.  Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56;  *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (*en banc*).  Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id*.  If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for

trial.[8] *Id*. at 322-23.  Once the burden shifts to the respondent, he must direct the attention of

the court to evidence in the record and set forth specific facts sufficient to establish that there

is a genuine issue of material fact requiring a trial.  *Celotex Corp*., 477 U.S. at 324;

Fed.R.Civ.Pro. 56(c).  The responding party may not rest on mere allegations or denials of

the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but

must demonstrate by affidavit or other admissible evidence that there are genuine issues of

material fact or law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986);  *Adickes*

*v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970);  *Little*, 37 F.3d at 1075.  There must be

sufficient evidence favoring the non-moving party to support a verdict for that party.

*Anderson*, 477 U.S. at 249;  *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir.

1992).  There is no genuine issue of material fact if, viewing the evidence in the light most

favorable to the non-moving party, no reasonable trier of fact could find for the non-moving

party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

   If no dispute of fact is presented and if the mover is entitled to judgment as a matter

of law, the court is required to render the judgment prayed for.  Fed. R. Civ. P. 56(a);  *Celotex*

*Corp.*, 477 U.S. at 322  Before it can find that there are no genuine disputes of material fact,

however, the court must be satisfied that no reasonable trier of fact could have found for the

---

[8] Where the nonmoving party has the burden of proof at trial, the moving party does not have to
produce evidence which would negate the existence of material facts. It meets its burden by simply
pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at
325.  To oppose the summary judgment motion successfully, the non-moving party must then be able to
establish elements essential to its case on which it will bear the burden of proof at trial. A complete
failure of proof by the nonmoving party of these essential elements renders all other facts immaterial. *Id.*
at 322.

non-moving party.  *Id.*

## IV.  Analysis

### A.  Plaintiff's Claims Under 42 U.S.C. § 1983

Plaintiff alleges that defendant Griffith conspired with defendants, Officer Gallow, in his official capacity and in his individual capacity as a police officer for the City of Opelousas, *see FN 1*, *supra*, and Donald Cravins, in his capacity as a Louisiana State Senator, as well as with Jan Huffman and Jessica Harbin, to deprive her of her constitutional rights to care, custody, control and management of her minor son, Cole, from May 1, 2006 through January 28, 2008, in violation of  Title 42 of the United States Code section 1983. In particular, plaintiff alleges that Gallow used his position as a police officer to obstruct justice by helping Griffith create evidence of a battery conviction and providing perjured testimony in the custody proceeding as an allegedly unbiased witness so he could assist Griffith in establishing that plaintiff was unfit, unstable and violent.  Plaintiff also alleges that, at Griffith's request, Cravins used his influence as a state senator when he telephoned Deputy Alex Montgomery, III, an investigating juvenile officer with the Lafayette Parish Sheriff's Department, prior to Montgomery's testimony at the January 18, 2006 custody hearing, in an effort to assist Griffith in depriving plaintiff of custody of Cole.  Finally, Latiolais alleges that Griffith "inducted" two of his female friends, Jan Huffman and Jessica Harbin, Huffman's daughter, to turn Latiolais' daughter, Lana, against her mother and ultimately report Latiolais for child abuse.  Latiolais also alleges that Huffman and Harbin harassed her with false criminal complaints and allegations from April 7, 2006 to October

15, 2007, which resulted in police officers being dispatched to her home while Cole was in her care.[9]

To state a claim under 42 U.S.C. § 1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Randolph v. Cervantes* 130 F.3d 727, 730 (5th Cir.1997).  Plaintiff alleges that Griffith conspired with Officer Gallow and Senator Cravins as well as Huffman and Harbin to "deprive her of her rights to custody, control, and management of her minor son" which resulted in the actual deprivation "of her constitutionally protected right in parenthood."  *R. 97.*

In *Stanley v. Illinois,* 405 U.S. 645, 651 (U.S. 1972), the Supreme Court stated:

> The rights to conceive and to raise one's children have been deemed essential,  basic civil rights of man,  and rights far more precious than property rights.

(Internal citations and quotations omitted).  The Court further stated:

> The integrity of the family unit has found protection in the Due Process  Clause  of  the  Fourteenth  Amendment,  the  Equal

---

[9]  In his March 27, 2008 Reasons For Rulings in the custody trial, State District Judge David A. Blanchet made the following statement with regard to Huffman and Harbin:

> After reviewing the massive numbers of telephone communications and hours of telephone calls between [Griffith] and Jan Huffman, and [Griffith] and Jessica Harbin, as well as the timing of these calls, the Court has no doubt that Griffith not only ignored this Court's strong suggestion, but actually used these women to attempt to get [Latiolais] in criminal trouble and cause her stress and anxiety as a tactic to win custody of Cole....  Jan Huffman and Jessica Harbin have harassed [Latiolais] with false criminal charges of stalking and a false allegation that [Latiolais] tried to run Jessica over with her van...  Also, the Court finds by a preponderance of the evidence that [Griffith] encouraged Jan Huffman and Jessica Harbin to stalk [Latiolais], and encouraged Jessica Harbin to make harassing telephone calls to her for which Ms. Harbin was criminally charged.

*R. 1, Exh. A, 3/27/2008 Reasons For Ruling.*

9

Protection Clause of the Fourteenth Amendment, and the Ninth Amendment.

(Internal citations omitted).   Likewise, the Fifth Circuit in *Wooley v. City of Baton Rouge,* 211 F.3d 913, 920 (5th Cir.,2000) has clearly protected the integrity of the family unit in recognizing that "a parent's right to the care, custody, control, and management of their children is well-established."   The Court has not located, and the parties have not cited, any Fifth Circuit jurisprudence specifically recognizing a constitutional right to be free of a conspiracy by which state actors seek to influence a state court custody proceeding in order to deprive a parent of custody of his or her child.   In *Williams v. Rappeport*, 699 F. Supp. 501, 503 (D. Md. 1988) *aff'd without opinion sub nom. Williams v. Dvoskin*, 879 F.2d 863 (4th Cir. 1989), however, the Fourth Circuit recognized the implication of a constitutional right in factually similar circumstances.   In *Williams*, the ex-husband and father of the child brought a civil rights action against the court-appointed psychiatrist and psychologist for allegedly conspiring with his ex-wife, the mother of the child, to deprive him of custody of his daughter.   Defendants argued that plaintiff had not pled the actual deprivation of any right protected by the Constitution.   The *Williams* court disagreed, finding plaintiff's claim did state a colorable substantive due process claim as it asserted that defendants deprived plaintiff of "his liberty interest in rearing his child." *Id.* at 504.   The court stated that "[w]hile the outer boundaries of the right to rear one's child are not clear, particularly when a parent's rights have not been completely terminated, [plaintiff] has alleged a violation of a liberty interest...." *Id.* at 505.

Considering plaintiff's allegations regarding Griffith's conspiracy to wrest custody

of Cole from plaintiff and the judgments in the various state court proceedings, the Court concludes, and therefore finds, based on the state trial judge's findings, *see FN 8,supra; FN 14*, *infra*, that plaintiff has alleged a violation of her constitutional rights.  As it is undisputed that Roylis Gallow was acting in his capacity as a Police Officer for the City of Opelousas and that Donald Cravins was serving as a Louisiana State Senator at the time of the events at issue, plaintiff has stated a claim under section 1983.

To establish a civil conspiracy claim under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in the deprivation of a constitutional right. 42 U.S.C.A. § 1983; *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir.1995).  A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but a conspiracy claim is not actionable without an actual violation of section 1983.  *Id*.  "[T]o act 'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State.  It is enough that he is a willful participant in joint action with the State or its agents.  Private persons, jointly engaged with state officials in the challenged action, are acting see [*sic*] 'under color' of law for purposes of § 1983 actions." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) (internal citations omitted).  Even if the state actor himself is held to be immune from suit, the private parties who conspire with the state actor act under color of state law for § 1983 purposes.  *Id*.  It is necessary for the plaintiff to provide more than mere conclusory, blanket allegations of conspiracy.  *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir.1991).

11

Rather, the plaintiff must allege specific facts suggesting that the defendants have banded together in order to commit an illegal act.  *Id.*   In this case, plaintiff's allegations are not merely conclusory; she alleges specific facts in support of her claims against Griffith, Gallow and Cravins.

### 1.  Alleged Conspiracy Between Griffith and Officer Gallow

Most relevant to the motion filed by Officer Gallow in his individual capacity, is the incident that occurred on November 30, 2005, at Opelousas General Hospital when plaintiff was cited for simple battery by Officer Gallow.  Plaintiff testified that she had arranged for Griffith to bring Cole to her house that morning at 7:30 a.m. because Cole had an appointment at the Opelousas General Hospital Lab at 8:00 a.m.  *R. 97, Exh. U, Testimony of Latiolais, pp. 973-74.*[10]  Upon calling Griffith at 7:35 - 7:40 a.m., he told her he was at the Hospital Lab with Cole.  *Id.*  Plaintiff stated when she arrived at the hospital, she did not find Griffith and Cole in the lab despite another call to Griffith in which he again told her he was in the lab.  *Id.*  While looking for Griffith and Cole, plaintiff  noticed a police officer[11] at the

---

[10]   In her summary judgment motion, plaintiff cites the sworn testimony from several of the state court proceedings, including the custody trial.  *See, i.e.,* R. 97-1; -15 (03/28/08 Ruling); R. 97-83; -84(01/19/06 custody hearing); R. 97-60; -81 (undated custody hearing regarding Hebert tape); R. 97-62; -73, -74 (undated custody hearing, testimony of Montgomery); R. 97-75 05/01/06 custody hearing; R. 97-76 (undated testimony of Huffman); R. 97-86 (undated testimony of Griffith regarding Huffman and Harbin); R. 97-88; -90 (*Huffman v. Latiolais*, Civil no. 2006363, 10/16/06 Hearing; 03/05/07 Hearing).  Transcripts of each of these proceedings are part of the record. Although Rule 56 does not expressly contemplate the use of such evidence in granting summary judgment, the Fifth Circuit has found no error in relying thereon. *Kelley v. Price-Macemon, Inc.*,  992 F.2d 1408, 1415 (5th Cir.,1993) (It is well-settled that a certified transcript of a judicial proceeding may be considered on a motion for summary judgment); *see also*, *Randolph v. Laeisz*, 896 F.2d 964, 970 (5th Cir.1990) (considering-without discussion-the testimony given during the trial of the main action on a motion for summary judgment in a severed action).

[11]   Officer Gallow testified he was in uniform at the time of the incident.  *R. 97-83, p. 14.*

hospital "going back and forth through the lab and the admitting office." *Id.*  Officer Gallow

testified that he was at the hospital to visit his mother who was a patient but that he "didn't

get a chance to" visit her that day.  *R. 97, Exh. S, 01/19/06 custody hearing, p. 00594.*

Latiolais approached Gallow to request his assistance in finding Cole and told him she may

have "some trouble." *Id.*  Latiolais stated that when she told Gallow her name he told her he

was supposed to be looking for her.  *Id.*  She further testified that Gallow pointed her out to

the security guard at the hospital.  *Id.*  Latiolais stated that when she found Griffith and Cole,

they were accompanied by Cindy Hebert, and upon seeing plaintiff Hebert said, "you don't

deserve your son." [12]  *Id.*

At that point, Latiolais took Cole from Griffith and pushed Hebert with her elbow.

*Id. at 972; Exh. 7, 1/19/2006 Testimony of Gallow, pp. 4.*  Gallow stepped between the two

women and approached Hebert who told him that she wanted to pursue an "unlawful battery"

against Latiolais.  *R 97-83, Exh. 7, pp. 4-13.*  Gallow testified he would have left the scene

without writing a citation, however, Hebert insisted that he cite Latiolais for simple battery

in violation of La. R.S. 14:35.  *Id.*  Plaintiff pled *nolo contendre* to the battery charge.  *R. 97-*

*67, Exh. S, p. 972; R. 97-92,04/07/08 order of expungement of record.*

Officer Gallow testified in the January 19, 2006 custody hearing[13] about the hospital

incident and the contrasting demeanors exhibited by Latiolais and Griffith during its

---

[12]  Hebert is the mother of Griffith's daughter, Paige.  Latiolais represents that Hebert previously
served probation for threatening to kill her.  *R. 97.*

[13]  Gallow's testimony on January 19, 2006 was prior to the January 28, 2008 hearing in which
plaintiff confronted Gallow with his cell phone records, *97-84,* and prior to Griffith's October 13, 2009
admission that he and Gallow in fact knew each other before the November 30, 2005 incident.  *R. 97-85.*

occurrence, as follows:

> In the [hospital] hallway she [Latiolais] was standing up, looked like looking at the ceiling and maybe talking to herself, which I didn't see no one else there. And she looks at me and she stops. She said, "You are a police?" I said, "Yes, I am." "There is going to be some trouble here." I said, "Trouble where?" "Just wait right here. Just wait right here."
>
> Then moments shortly she walked toward a white male and a female. The male had a small child in his hand and she violently jerked the kid from the male subject. And with the child in her had, she stepped to her left, and at that moment, she began to shove another lady with her elbows pushing her back. And at that time, I came in the middle and stopped it, and when I got in between, I backed her away, and the kid was screaming and crying....
>
> At that point she put the kid on the ground – on the floor and he ran toward the alleged father and she started walking again at a fast pace, which I felt was a combative manner, you know, by looking in her face. She wouldn't say nothing loud. I stepped in the middle, grabbed her by the shoulder, and I said, "What's the problem?" She said, "I'm just upset because he was supposed to have been here with the child for 8 o'clock. I said, "ma'am, it's 8:03, 8:04, something like that." I said, 'Just have a seat here."
>
> So I went to talk to the other lady, asked her if she was okay. She said, "No, I'm not okay, but I'm upset. The lady committed an unlawful battery on me. What are you going to do? I want something done." I said, "Well, I'll do what I have to do." And she said, "Officer, and you saw what happened."

R. 97-83, Exh. 7, pp. 3-4.

Upon being questioned as to whether or not Griffith displayed any aggression during the

incident, Gallow stated:

> [n]ot that I've seen because afterward... I said, 'Sir, do you want to pursue the matter or do you want to give a written statement based on what took place here?' He said, 'No, Officer, I'd rather not because she is the mother of my child, and Ms. Hebert... is a friend of mine and a friend of my son as well as an employee at my place of business.' I would rather stay out of this. But ... if the Court subpoenas me, I'll come by and testify based on what I remember.'"

Id.

Officer Gallow testified again in the custody trial on January 28, 2008 as to whether

14

or not he had even spoken with Griffith on his cell phone and in particular on the morning of the November 30, 2005 hospital incident.  Gallow denied that he knew Griffith and insisted that he had never spoken to Griffith on his cell phone.  The record contains Officer Gallow's police department cell phone usage records from November 3, 2005 through December 2, 2006, indicating dozens of telephones calls on Gallow's cell phone to and from Griffith's cell phone.  *R. 97, Exh. 58.* It is undisputed that Griffith's cell phone number was established in the January 28, 2008 custody trial proceedings.  *R. 37, Exh. 7.*  On November 30, 2005, the records show an incoming call from Griffith's cell phone at 7:27 a.m. and a call from Gallow's cell phone to Griffith at 8:05 a.m.  In sworn testimony during the custody trial, Officer Gallow confirmed he was in possession of the cell phone the morning of the November 30, 2005 incident and that he used it that morning to call the Opelousas Police Department for backup.  *R. 97-84, Exh. CC, Transcript of 1/28/08 Proceeding, p. 1794-95.* In the same testimony, however, Gallow denied that he knew Griffith or had ever spoken with him on the telephone.  *Id.*  In addition to the cell phone records implicating Gallow's relationship with Griffith, Griffith admitted in Plaintiff's Request for Admission No. 1 that "prior to November 30, 2005 I knew Roylis Brent Gallow personally."  *R. 97-85, Exh. DD.*

After completion of the custody trial, which included Gallow's testimony about the November 30, 2005 incident, the court rendered judgment on March 27, 2008, continuing Latiolais's limited visitation with Cole until May 2008, after which Latiolais and Griffith

would share joint custody of Cole.  *R. 1, Exh. A, 3/27/2008 Reasons For Ruling.*[14]

Gallow contends he is entitled to qualified immunity in this case.  "The doctrine of qualified immunity seeks to strike a balance between competing social objectives, providing breathing space for the vigorous exercise of official authority while at the same time allowing a possibility of redress for victims of officials' abuses."  *Kinney v. Weaver* , 367 F.3d 337, 349 (5 Cir.,2004).  "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir.2002) (citing *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir.2001)).  This burden cannot be discharged by conclusory allegations and assertions. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir.2005).

Evaluating a claim of qualified immunity involves two inquiries: (1) whether the plaintiff has alleged a violation of a constitutional right; and (2) whether that right was clearly established at the time of the alleged misconduct.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001), overruled in part by *Pearson*, 129 S.Ct. 808. "[W]hether an official protected by

---

[14]  With regard to the November 30, 2005 incident, the state trial court's March 27, 2008 Reasons For Rulings stated:

> The Court also finds that the incident that occurred between [plaintiff] and Cindy Hebert at Opelousas General Hospital on November 30, 2005, was orchestrated by [Griffith].  It is clear from the cell phone records that [Griffith] spoke to Officer Roylis Brent Gallow of the Opelousas Police department prior to appearing at the hospital. [Griffith] admitted knowing Officer Gallow previously, though he denied speaking to him that day.  Again, the Court finds that [Griffith's] testimony in this regard, as well as the testimony of Officer Gallow, is not credible... Because of their past acrimony, the Court believes [Griffith] was confident that if he brought Cindy Hebert with him, that [plaintiff] would become upset and lose control.  Further, he wanted to document [plaintiff's] conduct by having Officer Gallow present as a witness.

qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir.2009) (citations omitted).  "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that the defendant's actions were lawful; but if officers of reasonable competence could disagree on the issue, immunity should be recognized." *Dayse v. Schuldt,* 894 F.2d 170, 173 (5th Cir.,1990) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). It is within the discretion of the district court to decide which of the two prongs of the qualified immunity analysis to address first in light of the circumstances of each case. *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009). Each defendant's actions must be evaluated individually in the qualified immunity context. *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir.2007).

In this case, Gallow asserts that plaintiff's claim against him fails in the first instance because she has not alleged facts in the Complaint which would support a finding that Gallow participated in any violation of her constitutional rights.  Gallow argues that Latiolais' arrest was reasonable based on her "aggressive behavior" and her actions against Hebert.  Gallow's argument misses the point as to the claim raised by Latiolais in this proceeding.  Plaintiff does not contend that she was cited for battery without probable cause or that the arrest in and of itself represented a deprivation of her constitutional rights.  Rather, plaintiff alleges that Gallow engaged in a conspiracy with Griffith in creating a scene between plaintiff and Hebert on the morning of November 30, 2005 about which Gallow

would later be able to testify in the custody proceeding in an effort to paint Latiolais as unfit. She further alleges that Gallow presented perjured testimony in the custody hearing by stating under oath that he did not know and did not communicate with Griffith before the November 30, 2005 incident.

A police officer's fabrication of evidence later used against a defendant at trial is an "indisputable" violation of the defendant's constitutional rights. *Castellano v. Fragozo*, 352 F.3d 939, 955 (5th Cir.2003) ("The manufacturing of evidence and the state's use of that evidence along with perjured testimony to obtain the [defendant's] wrongful conviction indisputably denied him rights secured by the Due Process Clause."); *Young v. Biggers*, 938 F.2d 565, 570 (5th Cir.1991) (holding that a police officer's fabrication of evidence against an innocent defendant violates a clearly established constitutional right to due process). "Public officers 'are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' A reasonable person, however, surely would realize that 'framing' someone for a crime that he did not commit deprives that person of his constitutional rights." *Young* at 570 (internal citations omitted).

Latiolais has presented competent summary judgment evidence which establishes a genuine dispute of material fact as to whether or not Officer Gallow deprived her of her constitutional rights.  Latiolais correctly observes that Gallow is not entitled to qualified immunity if she can prove that he knowingly presented false evidence in the custody hearing by denying or failing to disclose that he conspired with Griffith to set plaintiff up in a

18

confrontational situation which was known to make her angry and combative.  *See, Young*, 938 F.2d at 570.  Viewing the evidence in the light most favorable to plaintiff, including the cell phone records of Officer Gallow and Griffith's acknowledgment of his prior relationship with Gallow, both of which controvert Gallow's sworn testimony at the custody hearings and trial, *see FN14, supra*, the Court finds there exists genuine disputes of material fact.[15]

### 2.  Alleged Conspiracy Between Griffith and Senator Cravins

Plaintiff alleges that defendant Cravins conspired with Griffith to deprive her of custody of Cole by attempting to influence the investigation of her for child abuse.[16]  *R. 1*, ¶ *11*.  Specifically, plaintiff alleges that Cravins, acting as a Louisiana State Senator[17], "personally called the investigating juvenile officer, Deputy Alex Montgomery, III, of the Lafayette Parish Sheriff's Department and requested that Deputy Montgomery 'help [Griffith] out' in the ongoing child custody."  *Id.*

In his April 9, 2010 deposition, Cravins admitted that Griffith asked him to call

---

[15]  Defendants argue in the alternative that if the Court finds Officer Gallow is not entitled to qualified immunity, he is immune from civil liability as a non-party witness in the custody proceeding. Witnesses in a criminal trial have absolute immunity from liability for civil damages under Section 1983 for giving perjured testimony at trial and for conspiring to present their own or another witness' perjured testimony at trial,  *Mowbray v. Cameron County*, 274 F.3d 269, 277 (5th Cir.2001) (citing *Briscoe v. LaHue*, 460 U.S. 325, 329-31  (1983)).  Such immunity, however, does not protect Gallow under the allegations in this civil case in which plaintiff claims Gallow's testimony at the custody hearing is alleged to be in furtherance of a conspiracy to deprive her of the custody of her child.  *See Young v. Biggers*, 938 F.2d 565, 570 (5th Cir.1991).

[16]  Child abuse charges were made by plaintiff's daughter, Lana, in October, 2005 which lead to Cole being temporarily removed from Latiolais' custody and being given to Griffith.  Regarding the incident, the trial court stated it was "concerned about [Griffith's] efforts to turn Lana against her mother in the course of the litigation."  *R. 1-2.*

[17]  Plaintiff originally named Cravins as acting either in his capacity as the Mayor of Opelousas, Louisiana or as a Louisiana State Senator.  It is undisputed that at the time of the alleged incident involving Deputy Montgomery, Cravins was in fact a state senator, not the Mayor of Opelousas.

Detective Montgomery to help Griffith out in a  custody case with Latiolais, and that he agreed to make the call to Montgomery.  *R. 99, Exh. JJ, pp. 10-11.*  Cravins testified he told Montgomery he was calling on behalf of Griffith and stated,  "I don't want to influence you, I don't have any influence.  I'm just asking you to look at all the facts, that is all."  *Id., pp. 12 -13.*  Detective Montgomery testified that he was contacted by "Senator Don Cravins" who wanted him to "help [Griffith] out."  *R. 97-73, Exh. V, Testimony. of Montgomery, p. 1650-52.*  Montgomery stated that Cravins' telephone call "angered" him and did not change the course of how he handled the investigation.  *Id., pp. 1652.*  Deputy Montgomery testified that before the telephone call from Cravins, his office had closed the criminal investigation of plaintiff because Lana retracted her accusations and there was no evidence of abuse, and therefore, the children were returned to plaintiff's custody.   Montgomery further testified that the case was reopened in April 2006 based on Griffith's complaint of dissatisfaction with the investigation.  Montgomery could not recall when he received Cravens' phone call but that it was after the initial investigation had been closed and the reopened custody matter was on going.  *R. 97-73, Exh. V, pp. 1660-1662.*  Cravins stated that he made the call sometime between September 2005 and September 2006.  *R. 99, Exh. JJ, pp.10-11.*

To qualify as state action, the conduct in question "must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and "the party charged with the [conduct] must be a person who may fairly be said to be a state actor."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  Citing *Manax v. McNamara*, 842 F.2d 808 (5th Cir. 1988),

20

Cravins argues that merely because he held public office as a state senator at the time of the incident in question does not make him a "state actor" under § 1983.  In *Manax* a mayor was named as a defendant in a § 1983 action based upon allegations that she made false statements about the plaintiff, coordinated false newspaper articles and referred frivolous cases to lawyers.  *Id.*  In granting defendant's Rule 12(b) dismissal, the court found that plaintiff's allegations about the mayor concerned exclusively acts done in her private capacity as a citizen.  *Id. at 812.*  Because plaintiff failed to allege any incident in which the mayor "employed the slightest shred of the power of the mayor's office" the court stated that "all of these actions may be accomplished by ordinary citizens who lack an official position." *Id.*

Contrary to the Court's finding in *Manax*, Latiolais specifically alleges that Cravins used his position as Louisiana State Senator in an effort to influence Deputy Montgomery's testimony as a witness in the custody trial, and assist Griffith in carrying out a scheme to deprive plaintiff of her constitutional rights.  *R. 1, ¶ 11.*  It is unlikely that a telephone call by a "private citizen" would have any impact on a local law enforcement employee such as Deputy Montgomery and that Griffith would have requested Cravins make such a call if he was an ordinary citizen.  Moreover, Deputy Montgomery testified that he believed Cravins was a state senator when he called him and that he was attempting to influence his testimony in the upcoming custody hearing.

Lastly, Cravins contends that because Deputy Montgomery testified in the custody trial that he did not change his testimony in order to "help out" Griffith, there was no illegal

21

act committed, and therefore there can be no conspiracy under §1983.  In order to show the existence of a conspiracy, the plaintiff must demonstrate that the defendants agreed to commit an illegal act in furtherance of the conspiracy which resulted in the deprivation of the plaintiff's constitutional rights.   *Crowe v. Lucas*, 595 F.2d 985, 993 (5th Cir.1979); *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir.1982).  Plaintiff alleges that Cravins agreed to attempt to influence Officer Montgomery's testimony in plaintiff's child abuse hearing in furtherance of Griffith's conspiracy to deprive her of the custody of her child.  It is axiomatic that witness tampering is an illegal act.

Cravins contends he is entitled to qualified immunity.[18]  Cravins does not cite any support for his contention that he is entitled to assert the defense of qualified immunity in this law suit.  "[T]he burden is on the official claiming immunity to demonstrate his entitlement." *Dennis v. Sparks,* 449 U.S. 24, 29 (1980) (citing *Butz v. Economou*, 438 U.S. 478, 506 (1978).  The Court is unaware of any Fifth Circuit jurisprudence entitling a state legislative official to a qualified immunity defense, however, even assuming *arguendo* that he may assert the defense, Cravins would not be entitled to qualified immunity if plaintiff can prove that he knew or reasonably should have known that influencing or attempting to influence Deputy Montgomery's testimony in favor of Griffith was illegal and would violate the constitutional rights of Latiolais.  *See Young v. Biggers*, 938 F.2d at 570.  Viewing the evidence in the light most favorable to plaintiff, the Court finds there exist genuine disputes

---

[18] "The Supreme Court has recognized absolute § 1983 immunity for legislators acting within their legislative roles, *Tenney v. Brandhove*, 341 U.S. 367 (1951)...." *Tower v. Glover*, 467 U.S. 914, 920 (1984).  Here, there is no allegation that Cravins was acting within the legitimate legislative sphere, and therefore, absolute immunity does not apply.

of material fact as to whether Cravins knew or reasonably should have known that attempting to influence the testimony of Deputy Montgomery in the custody hearing would violate plaintiff's constitutional rights.

### 3.  The City of Opelousas and Officer Roylis Gallow in his Official Capacity

With regard to plaintiff's claim against Officer Gallow in his official capacity as a police officer for the City of Opelousas, it is well established that an official capacity suit attempts to sue the government entity by naming the officer as defendant.  *Hafer v. Melo*, 502 U.S. 21 (1991). "Section 1983 offers no *respondeat superior* liability. Municipalities face § 1983 liability 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury....'  *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978). Proof of municipal liability sufficient to satisfy *Monell* requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom).  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001)."  *Pineda v. City of Houston,*  291 F.3d 325, 328 (5th Cir. 2002).  As plaintiff makes no such allegations against the City of Opelousas, plaintiff's § 1983 claims against the City of Opelousas and Officer Gallow in his official capacity must be dismissed.

### B.  Plaintiff's State Law Claims

Plaintiff contends that Griffith, as the primary conspirator, along with Gallow and Cravins, are liable under the state law claims of conspiracy to abuse the judicial process and

to commit fraud/deceit and intentional infliction of emotional distress under Louisiana Civil Code Article 2315. "To establish a conspiracy, a plaintiff is required to provide evidence of the requisite agreement between the parties ... stated otherwise, the plaintiff is required to establish a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing." *Crutcher-Tufts Resources, Inc. v. Tufts,* 38 So.3d 987, 991, (La.App. 4 Cir.,2010).

Plaintiff further contends that Gallow is also liable to plaintiff for invasion of privacy and that the City of Opelousas is liable under the theory of *respondeat superior* for Gallow's alleged liability under the state law claims.

Finally, plaintiff alleges that Griffith, Gallow and Cravins are liable as co-conspirators for damages under Louisiana Civil Code Article 2324 for claims of false arrest and imprisonment and harassment and/or stalking which she alleges resulted from the actions of the non-defendants, Jessica Harbin and Jan Hoffman.  Louisiana Civil Code Article 2324 provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable in solido, with that person, for the damage caused by such act." Article 2324, however, does not by itself impose liability for a civil conspiracy. "[T]he language of Article 2324 that co-conspirators are answerable in solido 'for the damage caused by such act' indicates that the Article imposes solidary liability only for compensatory damages." *Ross v. Conoco, Inc.*, 828 So.2d 546, 552 (La.,2002).  Thus, in order to find any or all of defendants liable for damages with the non-defendants, Harbin and Hoffman, under Article 2324, plaintiff must establish the existence of a conspiracy between one or more of the

24

alleged co-conspiracy defendants and the non-defendants for the purpose of violating Latiolais' constitutional rights.   *See*, Stephens v. Bail Enforcement of Louisiana, 690 So.2d 124, 131 (La. 1 Cir., 1997)("the jurisprudence interpreting LSA-C.C. art. 2324 clearly requires an agreement (a meeting of the minds) or collusion between the parties for the purpose of committing wrongdoing").

As the Court has found that there are genuine issues of disputed material fact regarding whether Officer Gallow and/or Senator Cravins conspired with Griffith to deprive plaintiff of the custody of her child and cause her damages under § 1983, it would be inappropriate, based on the record, at the summary judgment stage, to dismiss plaintiff's state law claims.  Thus, summary judgment on those claims will be denied as premature.

### C.  Statute Of Limitations/Prescription

Defendant Gallow and the City of Opelousas contend that "all or some" of plaintiff's claims are prescribed.  Plaintiff argues that her claims against Gallow arise out of his testimony in the custody proceeding on January 28, 2008 and that she first became aware of her claims against Cravens at the January 9, 2008 testimony of Deputy Montgomery, both of which occurred less than one year prior to the date her law suit was filed on January 7, 2009.  Plaintiff further argues that her claims in this action against all defendants are the result of the conspiracy and continuous actions of the co-conspirators in furtherance of the conspiracy which began on May 1, 2006 and continued throughout the custody trial from August 21, 2006 until final judgment was rendered on October 9, 2008.  *R. 97.*  Plaintiff contends that with each day of trial, she continued to incur attorneys' fees and expenses

associated with defending herself against the conspiracy.  *Id.*

No statute of limitations exists for actions brought under 42 U.S.C. § 1983. Rather, federal courts borrow the forum state's general personal injury limitation period.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir .1998). In Louisiana, the applicable prescriptive period is one year. La. Civ.Code Ann. art. 3492; *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir.1989).  Federal law, not state law, determines when the cause of action accrues and the prescriptive period begins to run. *Wallace* at 388; *Jacobsen* at 319.  "[I]t is the standard rule that [accrual occurs] when the plaintiff has a complete and present cause of action .... that is, when the plaintiff can file suit and obtain relief." *Wallace* at 388 (citing 4 Restatement (Second) of Torts § 899); *see also Adepegba v. Louisiana*, 41 F.3d 663(5th Cir.1994) ("Under federal law, a cause of action accrues at the time the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'") (quoting *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir.1989)).

As to plaintiff's § 1983 claims, Latiolais did not know that she would be deprived of the custody of her child, the injury which is the basis of her federal claims, until, at the earliest, March 27, 2008, the date the state trial court issued its initial judgment.  Even considering each defendant's actions individually, the record indicates that Detective Montgomery testified for the first time about Senator Cravins' attempt to influence his testimony on January 9, 2008 and Officer Gallow denied any involvement with Griffith with regard to the November 30, 2005 hospital incident on January 28, 2008.  Thus, plaintiff's § 1983 action filed on January 7, 2009 was within one year of the date she incurred an injury

and within one year of defendant's alleged violations of plaintiff's constitutional rights.

As to the accrual of prescription related to plaintiff's claims under Louisiana state law, "[u]nder the continuing tort doctrine, 'continuing and repeated wrongful acts are to be regarded as a single wrong which gives rise to and is cognizable in a single action, rather than a series of successive actions.'" *Henry v. Cisco Systems, Inc.*, 106 Fed.Appx. 235, 241, (5th Cir. 2004)(quoting *Wilson v. Hartzman*, 373 So.2d 204, 207 (La.Ct.App.1979)). "Therefore, the date for commencing the accrual of prescription of an action based on the single wrong is the date of the last wrongful exposure, and the single action may be filed within the prescriptive period reckoning from the cessation of the continuing wrongful acts." *Wilson* at 207. "If the plaintiff's claim involves a continuing tort, "then prescription does not commence until the last act occurs or the conduct is abated." *Bustamento v. Tucker*, 607 So.2d 532, 542 (La.1992). Based on the foregoing, the same facts which establish that plaintiff's claims under section 1983 are timely, affirm that her state law claims have not prescribed.

*V. Conclusion*

For the foregoing reasons, plaintiff has provided sufficient competent summary judgment evidence to place before a jury the issues of whether Police Officer Gallow and former State Senator Cravins conspired with Griffith to deprive plaintiff of her constitutional right to the care, custody, control, and management of her child. The Court will therefore deny Bradley Griffith's, the Estate of Officer Gallow's and Donald Cravins, Sr.'s motions for summary judgment as to plaintiff's §1983 claims based on the Court's finding that

genuine issues of material dispute exist as to whether or not their actions violated her constitutional rights, and will deny defendants' motions related to the state law claims as premature, with the right of each defendant to reassert their motion as a motion for judgment as a matter of law, pursuant to Rule 50 of the Federal Rules of Civil Procedure, if appropriate,  at the conclusion of plaintiff's case in chief during the trial of this matter. The Court will grant the motion for summary judgment filed by the City of Opelousas and Roylis Gallow, in his official capacity as a police officer for  the City of Opelousas, as to plaintiff's §1983 claims and deny the motion as to plaintiff's state law claims.

This Court is keenly aware of the maxim that "bad facts make bad law."  Based on the record before it, as set out with specificity herein, for the Court to countenance the alleged behavior of defendants Griffith, Gallow and Cravins at the summary judgment stage would be, at the least, disrespectful of the judicial process, and at most unconscionable.