## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE-OPELOUSAS DIVISION

**RESA LATIOLAIS**                        **CIVIL ACTION NO. 09-18**

**VERSUS**                                **JUDGE WALTER**

**BRADLEY GRIFFITH, ET AL**               **MAGISTRATE JUDGE HANNA**

### Report and Recommendation
### (Doc. 243)

Currently pending before the undersigned, on referral from the district judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court, is Plaintiff's Motion for Attorney's Fees [Rec. Doc. 243]. The motion is opposed by the defendants. After considering the applicable law, the written submissions and arguments of the parties, and for the following reasons, the undersigned recommends that the motion be granted and that attorney fees be awarded to Resa Latiolais as prevailing party plaintiff.

### *Background*

Resa Latiolais filed the instant law suit on January 1, 2009, asserting claims under the provisions of 42 U.S.C. §1983 and Louisiana state law against Bradley Griffith, Officer Roylis Gallow, the City of Opelousas, and Donald Cravins, Sr., in his capacity as a Louisiana state senator. Latiolais alleged that the named

defendants conspired with one another and with other individuals to deprive her of her constitutionally protected liberty interest in the companionship, care, custody, and management of her child.  She also alleged that the defendants are liable in solido for the damages caused by their conspiracy pursuant to Louisiana tort law.

On March 30, 2011, the district court granted the motion for summary judgment filed by the City of Opelousas and Roylis Gallow, in his official capacity as a police officer, as to Latiolais' §1983 claims, and those claims were dismissed. Similar motions by  Griffith, Cravins, and the Estate of Officer Gallow (for individual capacity claims) were denied. [Rec. Doc. 114].  In February, 2013, Latiolais voluntarily settled and dismissed all of her claims against Bradley Griffiths, reserving her rights against the remaining defendants. [Rec. Doc. 130-131].

The matter proceeded to jury trial on August 13-16, 2013.  At the close of the plaintiff's case in chief, Cravins was dismissed.  The jury returned a verdict for the plaintiff and against Claudette Gallow, as surviving spouse of Roylis Gallow, and against Bradley Griffith, as a jointly and severally liable tortfeasor who settled with the plaintiff prior to trial.  The plaintiff prevailed on none of her federal law claims; the verdict and resulting judgment addressed only the state law claims. [Rec. Doc. 192]. Plaintiff's post-trial motions for new trial and for amendment of the judgment were denied, and Latiolais appealed. The Fifth Circuit considered the

appeal and ordered that the trial judgment be vacated and the cause remanded for a new trial after reassignment to a different judge. [Rec. Doc. 205].  Pursuant to the mandate, the matter was reassigned to Judge Donald E. Walter on September 5, 2014.

The case was retried on December 8-10, 2014, and the jury returned a verdict for Latiolais against Claudette Gallow, as surviving spouse of Roylis Gallow, on the individual capacity claims under § 1983 against Gallow; the City of Opelousas, as employer of Roylis Gallow on the state law claims; Donald Cravins, on both the federal and state law claims; and Bradley Griffith, as a solidarily liable tortfeasor.  Latiolais was awarded $200,000.00 in compensatory damages resulting from constitutional deprivations; plus $50,000.00 in punitive damages against Gallow and $50,000.00 in punitive damages against Cravins. [Rec. Doc.242].  On the state law claims, Latiolais was awarded $100,000.00 in compensatory damages.  In the judgment the defendants received a reduction of the total compensatory damages award by one-third, as credit for the pre-trial settlement by Griffith. [Rec. Doc. 242].  As to the §1983, judgment was entered in the amount of $133,333.33 (calculated as 2/3 of $200,000.00), plus punitive damages in the amounts of $50,000.00 against Gallow and $50,000.00 against Cravins. Latiolais was also awarded an additional $66,666.66 (calculated as 2/3 of $100,000.00) in damages on the state tort claims.

Thus, the plaintiff's total award on her federal law claims is $233,333.33, and therefore,  Resa Latiolais is a prevailing party as to her §1983 claims against the defendants cast in judgment on those claims. As such, she is entitled to recover her reasonable attorney fees under provisions of 42 U.S.C. §1988.

**The Motion before the Court and the Positions of the Parties:**

In the motion before this Court, Latiolais seeks recovery of attorneys' fees in the total amount of $365,279.50.  Attorney Julie Felder has submitted attorney fee billing entries for 502.5 hours at $275.00/hour for a requested total of $138,187.50.  The law firm of Huval, Veazey, Felder & Renegar, LLC has submitted attorney billing entries for 767 hours at $275.00/hour for a requested total of $210,925.00 and paralegal/legal assistant billing entries for 190.2 hours at $85.00/hour for a requested total of $16,167.00.

In opposition to the motion Cravins asserts that Latiolais failed to meet her burden to show that the hourly rate requested for her attorneys is consistent with the prevailing rate in her community and that the court should therefore make its own determination of the prevailing rate. [Rec. Doc. 251].  Cravins has also pointed to billing record entries which are argued to be duplicative, vague, excessive, and unrelated to the outcome of the case.  Other entries are challenged as clerical tasks, and others are argued to constitute excessive, vague, and unacceptable block billing.  Cravins also argues that Latiolais failed to present

evidence of reasonable billing judgment, warranting a fixed percentage reduction of the attorney fee award. Finally, Cravins argues that the court should apply a credit to any attorney fee award, to account for the joint and several liability of the settling defendant Griffith, in a percentage consistent with that applied to the damage award.

### Applicable Law and Analysis

The general rule in the American legal system is that each party must pay its own attorney's fees and expenses.  *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).  Congress enacted 42 U.S.C. §1988 in order to ensure that federal rights are adequately enforced, providing that a prevailing party in certain civil rights actions, including actions under §1983, may recover "a reasonable attorney's fee as part of the costs." 42 U.S.C. §1988(b).  The statute does not explain what Congress meant by a "reasonable" fee, and therefore the task of identifying an appropriate methodology was left to the courts.  In the Fifth Circuit, the "lodestar" method is used to calculate reasonable attorneys' fees. *In re Fender*, 12 F.3d 480, 487(5th Cir. 1994), *cert. denied*, 511 U.S. 1143, 114 S.Ct. 2165, 128 L.Ed.2d 888(1994).  The"lodestar" analysis involves a two-step procedure. *Louisiana Power & Light Company v. Kelistrom*, 50 F.3d 319, 324 (5th Cir. 1995) (*citing Hensley*, 461 U.S. at 433).  Initially, the district court must determine the reasonable number of hours expended on the litigation and the

reasonable hourly rates for the participating lawyers.  Then, the court must

multiply the reasonable hours by the reasonable hourly rates. *Id.*  The product is

the "lodestar," which the court either accepts or adjusts upward or downward,

depending on the circumstances of the case, assessing the factors set forth in

*Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974).

The *Johnson* factors are: (1) the time and labor required; (2) the novelty and

difficulty of the issues; (3) the skill required to perform the legal services properly;

(4) the preclusion of other employment by the attorney; (5) the customary fee; (6)

whether the fee is fixed or contingent; (7) the time limitations imposed by the

client or circumstances; (8) the amount involved and results obtained; (9) the

experience, reputation, and ability of the attorneys; (10) the undesirability of the

case; (11) the nature and length of the professional relationship with the client;

and (12) the awards in similar cases. *Id.*  Three of the factors–the complexity of

the issues, the results obtained, and the preclusion of other employment–are fully

reflected and subsumed in the lodestar amount.  *Heidtman v. County of El Paso*,

171 F.3d 1038, 1043(5th Cir. 1999).  The Supreme Court has barred any use of the

sixth factor, *i.e.*, whether the fee is fixed or contingent. *Walker v. United States

Dept of Housing & Urban Dev.*, 99 F.3d 761, 772 (5th Cir. 1996), *citing City of

Burlington v. Dague*, 505 U.S. 557, 567(1992).  Additionally, "the court should

give special heed to the time and labor involved, the customary fee, the amount

involved and the result obtained, and the experience, reputation and ability of counsel." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047(5th Cir. 1998).

Ultimately, the court has discretion to fashion a reasonable attorneys' fee. *Hensley v. Eckerhart*, 461 U.S. at 436-37.  When making its determination, the court must provide a concise but clear explanation of its reasons for the fee award, making subsidiary factual determinations regarding whether the requested hourly rate is reasonable, and whether the tasks reported by counsel were duplicative, unnecessary, or unrelated to the purposes of the lawsuit. *Hensley v. Eckhart*, 461 U.S. at 437-39.  The Fifth Circuit has noted that its "concern is not that a complete litany be given, but that the findings be complete enough to assume a review which can determine whether the court has used proper factual criteria in exercising its discretion to fix just compensation." *Brantley v. Surles*, 804 F.2d 321, 325-26 (5th Cir. 1986).

### *Hourly Rates Claimed*

Typically, parties seeking to recover reasonable attorney fees submit the affidavit(s) of the attorneys who represented the prevailing party, describing the experience of the involved attorneys, verifying the submitted billing entries, and producing satisfactory evidence of prevailing rates in the community for similar services by lawyers of reasonably comparable skill, experience and reputation, and, if available, actual rates paid in similar lawsuits.  The 'relevant community'

for the purpose of awarding attorney fees is the judicial district in which the litigation occurred, in this case the Western District of Louisiana. A rate determined in this way is normally deemed to be reasonable, and is referred to-for convenience-as the prevailing market rate. *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11(1984).  Mere testimony that a given fee is reasonable is not satisfactory evidence of market rate. *Hensley*, 461 U.S. at 439 n. 15; *St. Joseph Abbey v. Castille*, 2015 WL 3444897, at *6 (E.D.La. May 27, 2015).  Further, the appropriate hourly rate is not that which "lions at the bar may command," but a rate that is adequate to attract competent counsel.  *Leroy v. City of Houston*, 906 F.2d 1068, 1079(5th Cir. 1990);  *Powell v. Hill*, 2008 WL 4933983, at *3(W.D.La. Nov. 13, 2008).

No such affidavits have been submitted by Latiolais' attorneys in this case, though both Julie and Brad Felder signed the Motion for Attorneys' Fees indicating that each billed her/his time at the rate of $275.00/hour.  [Rec. Doc. 243, ¶4].  The Felders have not set out their qualifications, years of practice, or experience in handling §1983 litigation, nor have the attorneys submitted any evidence of the rates charged by other civil rights attorneys in this community.  An attorney name query in the record of the United States Western District of Louisiana documents Brad Felder's involvement in two §1983 actions, including the instant case, which is the last filed.  A similar query regarding Julie Felder

reveals only the instant matter.  The Court recognizes that §1983 litigation is a specialized area of the law which may command a higher rate than applicable to other types of civil litigation.  However, Latiolais has offered no evidence of specialized skill or experience of her attorneys, as is her burden.  The billing statement from the Huval, Veazey, Felder & Renegar firm includes the same $275.00/hour rate for other attorneys who worked on the case doing primarily legal research.  No information is provided regarding the skill/experience levels of those attorneys.

Cravins argues that the Court should not accept the attorney-requested hourly rate in the lodestar analysis since Latiolais has not met her burden to show that the rate is in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation, and the Court should make its own determination of the prevailing rate. Based on the lack of evidence in the record regarding the qualifications and civil rights litigation experience of the lead attorneys for the plaintiff in this matter, the Court has looked to attorney fee awards from other civil rights cases in this district and neighboring districts in an effort to frame the prevailing rates in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.  Some examples include the following:

In *Lawrence v. Morris*, 2011 WL 1304477 (W.D.La. 2011), the prevailing

defense attorneys from a firm known by the court to have experience in handling civil rights defense matters requested and were awarded $145.00/hour, found to be a reasonable fee.  In that case, the court noted that examination of the jurisprudence in the district indicated that hourly rates as high as $215.00/hour were considered reasonable in §1983 litigation (citing *Powell v. Hill*, 2008 WL 4933983 (W.D.La.2008).

More recently, in *Campbell v. Harold Miller Jr. Trucking and Paving, LLC*, 2014 WL 6389567 (W.D.La.2014), the court considered as reasonable the $225.00/hour rate requested by attorney G. Andrew Veazey of the Huval, Veazey, Felder, Renegar firm in a Fair Labor Standards Act case.  The requested rate was not challenged by the defendants and was found by the court to be supported with sufficient documentation.

Factually similar is the recent decision of *Faulk v. Duplantis*, 2015 WL 3539637 *2 (E.D.La. June 4, 2015), which involved two attorneys and two trials such as presented in this case, and the court had the benefit of affidavits from two experienced civil rights attorneys, not parties to the litigation, who opined that the customary hourly rates charged for jury trial work in the Eastern District falls within the range of $150.00 to $225.00.  The Court is mindful that the attorneys in the Eastern District may charge hourly rates which are higher than those averaged in the Western District.   The Court is also mindful that even extremely qualified

and seasoned litigators "customarily charge their highest rates only for trial work. Lower rates may, and indeed should, be charged for routine work requiring less extraordinary skill and experience." *White v. Imperial Adjustment Corp.*, 2005 WL 1578810, at *8 (E.D.La. June 28, 2005).  *See also Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990).

The Court has been presented with no evidence regarding the plaintiff's attorney's qualifications and experience in civil rights litigation; the plaintiff has offered no evidence or support for their requested hourly rate as indicative of the prevailing market rate for similarly-credentialed attorneys; the requested rate is opposed by the defendants, and the requested rate is not supported by recent decisions from this district in comparable cases.  Based on these factors, along with the nature of this, its procedural history, and the complexity of the issues involved, this Court will use a rate of $200.00/hour for the lodestar calculation for the reasonable work done by trial counsel Julie and Brad Felder.  For the lodestar calculation relative to the research work performed by other attorneys identified in the billing statements submitted, the Court will use a rate of $150.00/hour.  The Court will use a paralegal hourly rate of $65.00/hour.

### *Reasonable Hours Expended*

The burden of proving the reasonableness of the hours expended is on the party seeking to recover attorneys' fees. *Mota v. University of Houston Health*

*Science Center*, 261 F.3d 512, 528 (5th Cir. 2001).  In determining the number of hours billed for purposes of calculating the lodestar, the court must determine whether the requested hours expended by counsel were reasonable in light of the facts of the case and the work performed. *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 799(5th Cir. 2008).  A court should compensate the plaintiff for the time his attorney reasonably spent in achieving the favorable outcome, even if "the plaintiff failed to prevail on every contention." *Hensley* , 461 U.S. at 435.  The fee award should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief; such work "cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Id.*, *Fox v. Vice*, 131 S.Ct. 2205, 2214, 180 L.Ed.2d 45 (2011).  Section 1988 does not necessarily award the prevailing party for every hour that his attorney spent working on the case, and it does not make the defendant liable for satisfying whatever fee arrangements a plaintiff makes with his attorney. *Gobert v. Williams*, 323 F.3d 1099 (5th Cir. 2003); *Faulk v. Duplantis*, 2015 WL 3539637 at *.  Further, it is well-settled that attorneys' fees awards should not provide a windfall to plaintiffs. *Hensley,* 461 U.S. at 430 n. 4, *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir.1995).

A determination must also be made concerning whether the records submitted show that the plaintiff's counsel exercised sound billing judgment by

excluding unproductive, excessive, or redundant hours when seeking the fee award. *Saizan v. Delta Concrete Products*, 448 F.3d at 799.  Thus, all time billed for work that is excessive, duplicative, or inadequately documented should be excluded from consideration. *Watkins v. Fordice*, 7 F.3d 453, 457(5th Cir. 1993).

Cravins challenged billing entries which indicate duplicative work from overstaffing (two or more attorneys doing the same task) and excessive time spent reviewing routine documents including filing confirmations and deficiency notices from the court and receipt and review of pleadings and other documents filed into the record by the plaintiff.  Cravins also points to billing for work on unsuccessful motions and claims instances of block-billing too vague to be properly analyzed, and billing for clerical services.  Specific dates have been referenced by Cravins where such alleged unreasonable billing is illustrated.

This Court has undertaken a careful examination of the  record along with the attorney fee bills submitted by Julie Felder and the law firm of Huval, Veazey, Felder & Renegar in support of the effort to recover the sums referenced. While the Court will not traverse the attorneys' itemizations line for line, the following categorized observations are made:

**Multiple Attorneys and Duplication of Effort:**  First, the Court notes that before suit was filed in the captioned matter, there was an ongoing and complicated state family court matter involving Resa Latiolais and Brad Griffith regarding their

child.  Julie Felder represented Ms. Latiolais in the state court, and she enrolled as

additional counsel in this matter in February, 2010.  Julie and Brad Felder are

husband and wife, and they work in different offices.  Other lawyers in the Huval,

Veazey, Felder & Renegar firm also worked in this case, as did at least one

paralegal.  When more than one attorney is involved in a case, the possibility of

duplication of effort increases, and the billing submissions in this case include a

number of instances when two or more attorneys have billed for receipt and review

of the same correspondence and multiple attorneys have researched the same

issues and drafted/edited the same documents.  Additionally, there are instances

when two attorneys billed for appearances at which only one attorney actually

participated.

Duplication of effort along with the proper utilization of time can be a

problem when more than one attorney is involved in a case, and billing records

should be scrutinized in such cases for proper time utilization.  For example, on

February 15, 2011, Julie Felder billed .2 hours for "receipt and review of

electronically filed document 111; Brad Felder also billed .2 hours for receipt and

review of the same electronic document.  The document itself contains four lines,

granting the plaintiff's motion to file excess pages. [Rec. Doc. 111].  At the

documented $275.00/hour rate, the two attorneys billed collectively $110.00 for

perusal of that document.  The billing records submitted by Latiolais contain

numerous similar instances where two attorneys logged .4 hours collectively for electronic court notifications which could easily be studied in less than .1 hour by any analysis.

Undoubtedly having two or more attorneys work on a project makes the work easier for all, but the Court is not persuaded that the defendants should bear the entire cost for such time, especially when, as in this case, some of that time was spent on unsuccessful efforts, including the successful summary judgment motion by the City of Opelousas on the plaintiff's federal claims and the plaintiff's motion to disqualify counsel for Cravins.  Most notable is that the record contains the significant billing entries of both Julie and Brad Felder for the first trial in this matter at which Julie Felder was the primary litigator.  Both attorneys made very general billing descriptions for "trial preparation" and "trial participation," making it difficult to determine whether all of the hours claimed by the two attorneys were reasonably expended on the litigation. The attorneys' combined preparation and appearance billing entries for that trial exceed 400 hours, and the plaintiff did not prevail on any federal claims in the course of that trial.  Approximately 300 hours were expended by the two attorneys in preparation for and participation in the second trial, in which the plaintiff did succeed on her federal claims.  There has been no showing that the second trial was necessitated by any conduct on the part of the defendants cast in judgment or their attorneys.  Again, it is difficult to

determine and evaluate from the very general billing descriptions exactly what each attorney did.  *Hensley*, 461 U.S. at 434. *See also Leroy v. City of Houston(Leroy II),* 906 F.2d 1068, 1080 (5th Cir. 1990)(striking hours as "not illuminating as to the subject matter" or "vague as to precisely what was done"), and *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir.1995).

***Associate Attorneys, Paralegals and Clerical Work:*** The other attorneys noted in the billing records to have performed work in this case included G. Andrew Veazey, Stacy Kennedy, Dona Renegar, and Bradley Black-all known to this Court as members of the Louisiana State Bar.  Stephini Salles is not known to this Court, and  the Court finds no record of her membership in the Lafayette Parish or Louisiana Bar Associations.  There is likewise no information about Ms. Salles through the 'Attorney Search' tool on the Louisiana Attorney Disciplinary Board website.  Absent any information to verify that she is an attorney, and finding that the work done by Ms. Salles as recorded in the billing submissions is confined to legal research, the court will classify her work as paralegal work, to be billed at paralegal rates.

The legal activities undertaken by paralegals must be distinguished from other activities that are purely clerical in nature, such as typing, copying, or delivering pleadings. *Lalla v. City of New Orleans,* 161 F.Supp.2d 686, 710(E.D.La. 2001).  Pure clerical or secretarial work may not be billed at a

paralegal rate. *Stagner v. W. Kentucky Navigation, Inc.*, 2004 WL 253453, at *5
(E.D. La. Feb. 10, 2004)**.**  The Court finds that most work recorded by/for Shenee
Broussard is best characterized as clerical work, including typing, copying,
redacting and scheduling.  Such billing is not recoverable in a §1988 fee award.
*Vela v. City of Houston*, 276 F.3d 659, 681(5th Cir. 2001).

**Billing Judgment:**  Federal courts generally require that the requesting attorney
demonstrate and document the exercise of billing judgment. *Saizan v. Delta
Concrete Products Co.*, 448 F.3d at 799. Billing judgment requires documentation
of hours that are written off as unproductive, excessive, or redundant, just as
counsel would do for a client who pays his fee at an hourly rate. Ideally, the fee
application will show not only the hours that are claimed but also those that were
written off based on the sound exercise of billing judgment. *Id.*; *Alberti v.
Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990).

The plaintiffs are charged with the burden of showing the reasonableness of
the hours they bill and, accordingly, are charged with proving that they exercised
billing judgment. *Leroy,* 831 F.2d at 586. They have failed to do so in this case,
and the Court cannot make a finding of billing judgment. The proper remedy when
there is no evidence of billing judgment is to reduce the hours awarded by a
percentage intended to substitute for the exercise of billing judgment. *Walker v.
U.S. Dept of Housing and Urban Development*, 99 F.3d 761, 770 (5th Cir. 1996);

*HDRE Business Partners Ltd. Grp., LLC v. Rare Hospitality International, Inc.*,
2015 WL 3440277, at *7(W.D.La. May 27, 2015).

Based on the foregoing,  the Court finds it appropriate to allow 65% of the
total hours claimed by the plaintiff's attorneys.

**The Lodestar**

This Court will use a rate of $200.00/hour for the lodestar calculation for
the reasonable work done by trial counsel Julie and Brad Felder. They reported a
total of 1,146 hours billed.  Other attorneys from the Huval, Veazey, Felder &
Renegar firm entered billing totalling 92.2 hours, to which the undersigned assigns
an hourly rate of $150.00.  The Court finds the work done by Shenee Broussard as
documented in the submissions of the Huval, Veazey, Felder & Renegar firm is
primarily clerical and not recoverable under §1988.  Paralegal billing is calculated
to be 61 hours, at $65.00/hour.  For the reasons articulated above, the undersigned
recommends that the attorney's fees be calculated as follows:

| | | |
|---|---|---|
| Julie Felder | 502.5 hrs. X $200 =$ | 100,500.00 |
| Brad Felder | 643.5 hrs. X $200 =$ | 128,700.00 |
| Other attys | 92.2 hrs. X $150 =$ | 13,830.00 |
| Paralegal | 61 hrs. X $65.00=$ | 3,965.00 |
| TOTAL | | $246,995.00 |
| **After LODESTAR reduction by 35%** | | **$160,546.75** |

**Adjustment of the Lodestar and the *Johnson* Analysis**

The undersigned next applies the *Johnson* factors, as amended by subsequent case law, to the lodestar amount. There is a strong presumption that the lodestar figure is reasonable.  Nevertheless, the evaluative process allows for downward adjustments, or in rare cases, upward adjustments, to be made to the lodestar amount based on consideration of the *Johnson* factors.  Although a court need not be meticulously detailed in its analysis, it must articulate and clearly apply the twelve factors to determine how each affects the lodestar amount. Special consideration is to be given to the time and labor involved, the customary fee, the amount involved and the results obtained, and the experience, reputation, and ability of counsel.  However, to the extent that a factor has been previously considered in the calculation of the benchmark lodestar amount, no further adjustments should be made on that basis.  *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th. Cir. 1999).  An itemized list of the factors and analysis of each as it applies in the instant case follows:

(1) Time and labor involved.  The lodestar adequately compensates for the time and labor in preparing and trying the case.

(2) Novelty and difficulty of the questions. Although this case involved litigation under 42 U.S.C. §1983, and the factual and legal issues were somewhat novel, they were not overly difficult, and the lodestar adequately compensates for this

factor.

(3) The skill required to perform the legal services properly. The hourly rate awarded herein adequately compensates counsel for the level of skill required to handle this matter competently.

(4) Preclusion of other employment.  There is no evidence to establish that the handling of this case precluded handling of other cases by Plaintiff's counsel.

(5) Customary fee. In accordance with the analysis set out above, the hourly rate found by the undersigned to be reasonable falls within the customary range of fees in this market.

(6) Fixed or contingent fee. This factor can no longer be considered. *City of Burlington v. Dague*, 505 U.S. at 567.

(7) Time limitations.  There is no evidence that any extraordinary time limitations or onerous circumstances justify an adjustment to the lodestar.

(8) The time involved and the results obtained.  The lodestar adequately compensates for this factor.  Further, the Supreme Court has greatly limited the use of this factor. *Walker v. U.S. Department of Housing & Urban Dev.*, 99 F.3d 761, 771 (5th Cir.1996).

(9) The experience, reputation and ability of counsel. This factor has also been limited by the Supreme Court. *Walker*, 99 F.3d at 771. As discussed above, the Court has specifically noted the absence of information about the experience and

expertise of the involved attorneys, compensating for this factor in the lodestar calculation.

(10) The undesirability of the case.  No evidence was adduced on this point. Although §1983 litigation may involve undesirable situations, the lodestar adequately compensates for this factor.

(11) The nature and professional relationship with the client.  No specific evidence was adduced on this point.  Nevertheless, the lodestar adequately compensates for this factor.

(12) Awards in similar cases.  Such awards were reviewed and considered by the Court as set out above.

Because the lodestar is presumptively reasonable, it should be modified only in exceptional cases, and the fee applicant bears the burden of establishing a necessary deviation from the lodestar. *City of Burlington*, 505 U.S. at 562. Finding that this is not an exceptional case, and finding that plaintiff has not demonstrated that a deviation from the lodestar is warranted, the Court finds that the lodestar requires no adjustment.

What remains is the question whether the attorney fee award is subject to the same 1/3 reduction as the compensatory damage award based on the credit to the defendants to account for the fault borne by the settling defendant Griffith as set out in the trial Judgment.  Liability on the merits and responsibility for fees go

hand in hand. *Kentucky v. Graham*, 473 U.S. 159, 165.  In order to recover an

attorney fee award pursuant to 42 U.S.C. §1988, the plaintiff must obtain an

enforceable judgment against the defendant from whom fees are sought,  or

comparable relief through a consent decree or settlement.  *Maher v. Gagne*, 448

U.S. 122, 129(1980); *Farrar v. Hobby*, 506 U.S. 103, 109.

　　In the instant case, Latiolais reached a settlement with Bradley Griffith, and

his fault was additionally assigned by the jury at trial.  Thus, for purposes of the

§1988 analysis, Latiolais is a prevailing party as to Griffith as well as the

defendants Cravins and Gallow.

　　It is well-settled that a court may impose joint and several liability in setting

attorney fees, especially when there is a single indivisible injury, and each party

played a substantial role in the litigation. *Walker* 99 F.3d at 772.  Since a civil

rights plaintiff will be considered a prevailing party for §1988 attorney fee

recovery even from/against parties who have settled in advance of trial, it is

appropriate to allocate responsibility among Cravins, Gallow and Griffith for the

attorney fee award. *Harvey v. Mohammed*, 951 F.Supp.2d 47

(D.D.C.2013)(Attorney fees to prevailing plaintiff in §1983 civil rights suit

allocated evenly between co-defendants, even though one defendant had settled

and the other had proceeded to jury trial. Both defendants shared relatively equal

culpability.).

In assigning and apportioning attorneys' fees and costs among multiple defendants, there is no simple, universally applied formula, and courts have applied a number of different approaches, from dividing fees equally among the defendants–to methods of apportionment based on relative culpability and the time the plaintiff was forced to spend litigating against the respective defendants.   As discussed above, the interrelatedness of the claims against the defendants and the billing submissions of the plaintiff in this case make it impossible to separate the actual time attorneys spent litigating against each defendant in the case, but the trial court has already determined the division of culpability of the defendants in the trial court judgment, including that of the settling defendant Griffith.   It is the recommendation of this Court that the same division and resulting credit be applied to the attorneys fee award.  Thus, the Court recommends that the above-referenced attorneys fee award be subjected to a 1/3 credit to Cravins and Gallow for the culpability and consequent attorney fee responsibility Griffith. Applying the credit to the attorney fee award total from the lodestar calculation results in a total attorney fee award of **$107,031.16.**

### *Recommendation*

Based on the foregoing, it is the recommendation of the undersigned that the Plaintiff's Motion for Attorney's Fees[Rec. Doc. 243] be GRANTED, and that an attorneys fee award of  **$107,031.16** be made to the plaintiff pursuant to 42 U.S.C.

§1988.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana this 23rd day of June, 2015.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE


COPY SENT:

DATE:   6/23/2015
BY:        EFA
TO:        DEW
            bj